```
                                                    USDC SDNY
                                                    DOCUMENT
                                                    ELECTRONICALLY FILED
                                                    DOC #: _____
UNITED STATES DISTRICT COURT                        DATE FILED: October 13, 2009
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :
PETER GIANOUKAS, DORIS GIANOUKAS                :
and NICHOLAS TARSIA,                            :
                                                :
                                                :
                Plaintiffs,                     :   09 Civ. 1266 (PAC)
                                                :
        - against -                             :
                                                :   MEMORANDUM
                                                :   OPINION & ORDER
PETER CAMPITIELLO, ESQ., LEVY &                 :
BOONSHOFT P.C., DAVID M. LEVY, ESQ.,            :
STEPHEN BOONSHOFT, ESQ. and EAST                :
WEST ACQUISITIONS, LLC,                         :
                                                :
                Defendants.                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

HONORABLE PAUL A. CROTTY, United States District Judge:

  Plaintiffs Peter Gianoukas ("Gianoukas"), Doris Gianoukas, and Nicholas Tarsia ("Tarsia") bring this action against Defendants Peter Campitiello, Esquire ("Campitiello"), Levy & Boonshoft, P.C. ("L&B"), David M. Levy, Esquire ("Levy"), Stephen Boonshoft, Esquire ("Boonshoft") and East West Acquisitions, LLC ("EWA"), asserting various claims arising out of a number of allegedly fraudulent securities transactions.

  Defendants Levy and Boonshoft, as individuals, move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the two claims asserted against them, for breach of fiduciary duty and negligence. They also move for sanctions and attorneys' fees under Rule 11. Levy and Boonshoft contend that they did not owe the Plaintiffs a fiduciary duty nor did they have a duty to supervise Campitiello.

  For the following reasons, Levy and Boonshoft's motion to dismiss is GRANTED and their motion for sanctions and attorneys' fees is DENIED.

## BACKGROUND

### I. Facts

Levy and Boonshoft are lawyers and officers of L&B, a New York professional services corporation. (Amended Complaint ("Am. Compl.") ¶¶ 9-11.) At times relevant to this action, Campitiello, who is also a lawyer, was a partner in, and employed by, L&B. (Id. ¶ 8.) The Amended Complaint alleges five separate fraudulent transactions: (1) Codine(x), (id. ¶¶ 41-68); (2) Pay Pad, (id. ¶¶ 69-87); (3) LIMPE, (id. ¶¶ 88-106); (4) Acellus, (id. ¶¶ 107-16); and (5) UTTI, (id. ¶¶ 117-34). Throughout the Amended Complaint, Campitiello is portrayed as the architect of the fraudulent transactions which bilked Plaintiffs out of in excess of $400,000. He did this as an employee of L&B, and used L&B's escrow account to receive funds from the Plaintiffs and thereafter funds were disbursed from the account to consummate the fraud. The Amended Complaint does not allege that Levy and Boonshoft were involved in, or knew of, the fraud.[1]

### II. Plaintiffs' Amended Complaint

Plaintiffs' Amended Complaint advances six claims. The first three claims, for violations of the Securities Exchange Act of 1934, fraud and conspiracy, are asserted against Campitiello and EWA and are based on the five fraudulent transactions. (Id. ¶¶ 153-84.) Plaintiffs' fifth claim alleges that Campitiello and L&B committed legal malpractice by giving erroneous advice regarding the legality of the five transactions and by failing to disclose various conflicts of interest. (Id. ¶¶ 204-18.)

---

[1] Plaintiffs' original Complaint was filed on February 11, 2009. On March 31, 2009, Plaintiffs filed the Amended Complaint which for the most part contains the same factual allegations as the Complaint. Plaintiffs' claim for legal malpractice was asserted against Campitiello, Levy, Boonshoft and L&B in the Complaint but is only asserted against Campitiello and L&B in the Amended Complaint.

Plaintiffs' fourth claim, for breach of fiduciary duty, is asserted against Campitiello, Levy, Boonshoft and L&B. Plaintiffs contend that Campitiello, Levy, Boonshoft and L&B breached their duties as escrow agents through their handling of funds transferred by the Plaintiffs into the L&B escrow account. (Id. ¶¶ 185-203.) The sixth[2] claim is for negligence based on the alleged failure of Levy, Boonshoft and L&B to supervise Campitiello and ensure he was not violating the law or his ethical obligations as an attorney. (Id. ¶¶ 219-27.)

## DISCUSSION

**III. Motion to Dismiss Standard**

When considering a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), "the court is to accept as true all facts alleged in the complaint" and "draw all reasonable inferences in favor of the plaintiff." Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice….While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009). To avoid dismissal, the complaint must contain "enough facts to state a claim to relief that is plausible on its face," i.e. facts that "nudge[] [the plaintiff's] claims across the line from conceivable to plausible…." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

---

[2] Count VI of the Amended Complaint is mislabeled as "Count V." (Pls.' Mem. in Opp'n to Mot. to Dismiss ("Pls.' Opp'n") at 1 n.1.)

**IV. Breach of Fiduciary Duty**

According to the Amended Complaint, the L&B escrow account is an "interest on lawyer account," also known as an "IOLA" account. (Am. Compl. ¶¶ 10-11); see N.Y. JUD. LAW § 497. Plaintiffs contend that Levy and Boonshoft owed them a fiduciary duty as escrow agents and as "signatories on the defendant law firm IOLA account." (Pls.' Opp'n at 2.)

Escrow funds require: "(a) an agreement regarding the subject matter and delivery of the funds, (b) a third-party depository, (c) delivery of the funds to a third-party conditioned upon the performance of some act or the occurrence of some event, and (d) relinquishment by [the depositor]." Rock Oak Estates v. Katahdin Corp., 280 A.D. 2d 960, 961, 721 N.Y.S.2d 208, 209 (App. Div. 4th Dep't 2001) (brackets omitted) (quoting Lennar Ne. Partners Ltd. P'ship v. Gifaldi, 258 A.D.2d 240, 243, 695 N.Y.S.2d 448, 450-51 (App. Div. 4th Dep't 1999)); see also 55 N.Y. Jur.2d Escrows § 3 (2009). The Amended Complaint refers to Levy and Boonshoft as "escrow agents." (Am. Compl. ¶¶ 85, 124, 187.) But, just as "[c]alling an act an escrow does not make it such," Gifaldi, 258 A.D.2d at 243, 694 N.Y.S.2d at 451, calling Levy and Boonshoft escrow agents does not mean they were indeed escrow agents. See Iqbal, 129 S. Ct. at 1949 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

The Amended Complaint is devoid of any allegation that Levy and Boonshoft were in contact with the Plaintiffs. When Plaintiffs transferred funds to the L&B escrow account, they did so at Campitiello's direction; and according to the Amended Complaint, Campitiello transferred the funds out of the account. (Am. Compl. ¶¶ 54, 58, 78, 103,

4

120, 125.)[3]  "It is obvious that no one, against his will, can be forced to act as an escrow agent."  Tinker Nat'l Bank v. Grassi, 57 Misc. 2d 886, 888, 293 N.Y.S.2d 847, 849 (Suffolk County Sup. Ct. 1968).  An escrow agent's liability for breach of fiduciary duty requires that, "the alleged escrow agent agreed to accept that responsibility."  Friedman v. Stern, No. 91 Civ. 0985 (LJF), 1992 WL 58878, at * 2 (S.D.N.Y. March 13, 1992) (finding failure to adduce evidence that law firm agreed to act as escrow agent required grant of summary judgment in firm's favor on breach of fiduciary duty claim); see also Nat'l Union Fire Ins. Co. v. Proskauer Rose Goetz & Mendelsohn, 165 Misc. 2d 539, 544, 634 N.Y.S.2d 609, 614 (New York County Sup. Ct. 1994); George A. Fuller Co. v. Alexander & Reed, Esqs., 760 F. Supp. 381, 386 (S.D.N.Y 1991).  Since Levy and Boonshoft never agreed to act as escrow agents, Plaintiffs' claim that they breached the fiduciary duty imposed upon them as escrow agents fails.

Next, Plaintiffs claim that Levy and Boonshoft are liable for breach of fiduciary duty as "signatories" on the L&B IOLA account.  An IOLA account "is a creation of New York State statute, and is defined as 'an unsegregated interest-bearing deposit account ... for the deposit by an attorney of qualified funds.'"  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 279 n.1 (2d Cir. 2006) (quoting N.Y. JUD. LAW § 497(1)).  "Qualified funds" are defined by N.Y. JUD. LAW § 497 as,

> moneys received by an attorney in a fiduciary capacity from a client or beneficial owner and which, in the judgment of the attorney, are too small in amount or are reasonably expected to be held for too short a time to generate sufficient interest income to justify the expense of administering a segregated account for the benefit of the client or beneficial owner.

---

[3] Attached as Exhibits B, C and D to Plaintiffs' memorandum in opposition are three "fund transfer applications" which Plaintiffs contend are signed by "at least one of the defendants [Levy or Boonshoft]." (Pls.' Opp'n at 11.)  Plaintiffs contend that the transfer applications are referenced in the Amended Complaint, but they are not.  (Id. at 11.)  Thus, in ruling on the motion to dismiss, consideration of the exhibits is inappropriate.  But, even if the transfer orders are signed by Levy or Boonshoft, this does not mean that Levy and Boonshoft served as escrow agents for the Plaintiffs.

5

N.Y. JUD. LAW § 497(2).  "Funds received in a fiduciary capacity" are in turn defined as, "funds received from a client or beneficial owner in the course of the practice of law, including but not limited to funds received in an escrow capacity, but not including funds received as trustee, guardian or receiver in bankruptcy."   Id. at § 497(2-a).  Since Levy and Boonshoft were "signatories" on L&B's IOLA account, with "managerial authority," Plaintiffs seek to hold them responsible for all disbursements from the account and any violations of Plaintiffs' escrow instructions.  (Pls.' Opp'n at 2.)

Placement of funds in the L&B IOLA account at Campitiello's direction does not mean that Levy and Boonshoft held those funds in a fiduciary capacity.  Throughout the Amended Complaint Plaintiffs allege that the misappropriated funds were held in the "escrow account of the defendant law firm of Levy & Boonshoft."  (Am. Compl. ¶¶ 54, 76, 94, 103, 120.)  L&B, as a professional corporation, is a legal entity separate and distinct from Levy and Boonshoft as individuals.  See Jacobs v. Life Ins. Co. of N. Am., 710 F. Supp. 521, 523 (S.D.N.Y 1989) ("Under New York law it is clear that a professional corporation must be regarded in the same fashion as any other corporation . . . [i]ts corporate identity is therefore statutorily separate from the identity of the individual.").  Further, to the extent Plaintiffs argue that N.Y. JUD. LAW § 497(2-a) imposes a fiduciary duty on attorneys who "receive[]" funds, the argument does not apply to Levy and Boonshoft because they never received any funds from the Plaintiffs in their individual capacities.  Placement of the funds in L&B's IOLA account does not alter the fact that Levy and Boonshoft never agreed to act as escrow agents for the Plaintiffs and therefore did not owe the Plaintiffs a fiduciary duty as escrow agents.

Plaintiffs' final contention is that Levy and Boonshoft owed them a fiduciary duty pursuant to Disciplinary Rule 9-102 of the New York Code of Professional Responsibility ("DR 9-102"), N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.46 (repealed 2009).[4]  DR 9-102(A) provides:

> A lawyer in possession of any funds or other property belonging to another person, where such possession is incident to his or her practice of law, is a fiduciary, and must not misappropriate such funds or property or commingle such funds or property with his or her own.

Plaintiffs argue that lawyers "who accept funds from persons in escrow or make a decision to have funds in the firm IOLA accounts are fiduciaries to such persons with respect to those funds." (Pls.' Opp'n at 10.)  The Amended Complaint does not, however, allege that Levy and Boonshoft agreed to accept funds from the Plaintiffs or that they were involved in the decision to have the Plaintiffs transfer funds to the L&B IOLA account.  Nor does the Amended Complaint allege that Levy and Boonshoft misappropriated or commingled Plaintiffs' funds; it is Campitiello who allegedly misappropriated the Plaintiffs' money.

Most importantly, "[w]hatver may be the constraints imposed by the Code of Professional Responsibility with the associated sanctions of professional discipline . . . [New York] courts have not recognized any liability of the lawyer to third parties . . . [for violations of disciplinary rules] where the factual situations have not fallen within one of the acknowledged categories of tort or contract liability."  Drago v. Buonagurio, 386 N.E.2d 910, 46 N.Y.2d 778, 779-80 (N.Y. 1978).  Plaintiffs do not contend that they had an attorney-client relationship with Levy or Boonshoft.  (Pls.'s Opp'n at 3.)  As shown

---

[4] The New York Rules of Professional Conduct became effective on April 1, 2009. See N.Y. COMP. CODES R. & REGS. tit. 22, §§ 1200.0-.59.  Attorney conduct occurring before the effective date is governed by the New York Code of Professional Responsibility.  See Weinstein, Chayt & Chase, P.C. v. Breitbart, 65 A.D.3d 587, 884 N.Y.S.2d 452, 453 (App. Div. 1st Dep't 2009).

7

above, Levy and Boonshoft were not the Plaintiffs' escrow agents.  Thus, to the extent Plaintiffs rely on DR 9-102 as the basis for their breach of fiduciary duty claim, the claim fails because "an alleged violation of a disciplinary rule 'does not, without more, generate a cause of action.'"  Agron v. Douglas W. Dunham, Esq. & Assocs., No. 02 Civ. 10071 (LAP), 2004 WL 691682, at *6 (S.D.N.Y Mar. 31, 2004) (quoting Schwartz v. Olshan Grundman Frome & Rosezweig, 302 A.D.2d 193, 199, 753 N.Y.S.2d 482, 487 (App. Div. 1st Dep't 2003)).  Plaintiffs' fourth claim for breach of fiduciary duty against Levy and Boonshoft is dismissed.

**V. Negligence**

The sixth claim is premised on Plaintiffs' contention that Levy and Boonshoft owed them a duty of care to ensure that other L&B lawyers were not engaging in fraud, while conducting firm business.  (Pls.' Opp'n at 17.)  Plaintiffs also contend that Levy and Boonshoft are personally liable for the misconduct of Campitiello under N.Y. BUS. CORP. LAW § 1505.  (Id. at 22.)

Plaintiffs recognize that the violation of a Disciplinary Rule does not itself give rise to a cause of action.  (Id. at 20).  Nevertheless, Plaintiffs rely on DR 1-104, N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.5 (repealed 2009), as a basis for their negligence claim.  Titled, "Responsibilities of a Partner or Supervisory Lawyer and Subordinate Lawyers," DR 1-104 in pertinent part provides:

> B. A lawyer with management responsibility in the law firm or direct supervisory authority over another lawyer shall make reasonable efforts to ensure that the other lawyer conforms to the disciplinary rules.
> . . . .
>
> D. A lawyer shall be responsible for a violation of the Disciplinary Rules by another lawyer or for conduct of a non-lawyer employed or retained by

> or associated with the lawyer that would be a violation of the Disciplinary Rules if engaged in by a lawyer if:
>
>> 1. The lawyer orders, or directs the specific conduct, or, with knowledge of the specific conduct, ratifies it; or
>>
>> 2. The lawyer is a partner in the law firm in which the other lawyer practices or the non-lawyer is employed, or has supervisory authority over the other lawyer or the non-lawyer, and knows of such conduct, or in the exercise of reasonable management or supervisory authority should have known of the conduct so that reasonable remedial action could be or could have been taken at a time when its consequences could be or could have been avoided or mitigated.

DR 1-104(B) and (D).[5]  The Amended Complaint describes Campitiello as a "partner in and employed by the defendant law firm Levy & Boonshoft, P.C." (Am. Comp. ¶ 8.) Levy and Boonshoft refer to Campitiello as a "contract employee." (Defs.' Mem. in Supp. Mot. to Dismiss at 2.)  The outcome does not depend on Campitiello's employment status.  The Amended Complaint fails to state a viable negligence claim against Levy and Boonshoft because the claim is founded solely on an alleged violation of the Code of Professional Responsibility.  See supra, at 7-8.[6]

Plaintiffs rely on two cases to support their negligence theory of liability. Plaintiffs cite to Swift v. Choe, 242 A.D.2d 188, 647 N.Y.S.2d 17 (App. Div. 1st Dep't 1998) in support of their argument that violation of a disciplinary rule may constitute evidence of Levy and Boonshoft's negligence "with respect to the IOLA account and their negligence in connection with their failure to supervise [Campitiello]."  (Pls.' Opp'n

---

[5] While Plaintiffs also cite to DR 1-104(A) and (C), those provision apply only to "[a] law firm," and are clearly inapplicable to Levy and Boonshoft.

[6] Citing to their arguments in support of the breach of fiduciary duty claim, Plaintiffs also state that Levy and Boonshoft "owe[d] a duty of reasonable care to plaintiffs with respect to the funds transferred in and out of the IOLA account of the law firm . . . ." (Pls.' Opp'n at 20.)  As discussed supra, at 4-8, Plaintiffs' arguments in support of their breach of fiduciary duty claim are not persuasive and their attempt to use those same arguments in support of their negligence claims is likewise unavailing.

at 20.) But the court's conclusion in Swift that violation of a disciplinary rule does not shield an attorney from an otherwise viable claim is beside the point. Swift, 242 A.D.2d at 193, 674 N.Y.S.2d at 20. The Plaintiffs' sole basis for imposing a duty of care upon Levy and Boonshoft is DR 1-104, and, as noted by the court in Swift, "a violation of a disciplinary rule does not, in itself, generate a cause of action . . . ." Id. at 193, 674 N.Y.S.2d at 20. Swift's statement that a violation of the disciplinary rules may constitute evidence of legal malpractice is dictum. Swift does not support Plaintiffs' negligence claim for the obvious reason that Plaintiffs do not asserts a legal malpractice claim against Levy and Boonshoft. Indeed, Plaintiffs could not assert such a claim against Levy and Boonshoft because in New York, "'[t]he general rule is that absent fraud, collusion, malicious acts or other special circumstances, an attorney is not liable to third parties, not in privity, for harm caused by professional negligence." Prudential Inc. Co. of Am. v. Dewey Ballantine, Bushby, Palmer & Wood, 170 A.D.2d 108, 118, 573 N.Y.S.2d 981, 988 (App. Div. 1st Dep't 1991); see also AG Capital Funding Partners, L.P. v. State Street Bank and Trust Co., 842 N.E.2d 471, 478, 5 N.Y.3d 582, 595 (N.Y. 2005). Plaintiffs do not contend that they were in privity with Levy or Boonshoft, and the Amended Complaint does not set forth any "special circumstances" that would provide a basis for a claim of legal malpractice against them.

Plaintiffs also rely on Rosenberg, Minc & Armstrong v. Mallilo & Grossman, 8 Misc. 3d 394, 798 N.Y.S.2d 322 (New York County Sup. Ct. 2005). But like Swift, Rosenberg is inapposite. Rosenberg involved claims for unjust enrichment and misappropriation against a law firm and one of its associates. Liability of the defendant law firm for the wrongful acts of the associate was upheld on appeal under the principles

of respondeat superior and ratification. The plaintiff in Rosenberg did not, however, assert a claim against the partners of a law firm in their individual capacities. And unlike the defendant law firm in Rosenberg, Levy and Boonshoft were not Campitiello's employer; instead, L&B was. As explained above, as a professional corporation, L&B is a legal entity separate and distinct from Levy and Boonshoft. Further, Plaintiffs do not allege that Levy and Boonshoft ratified Campitiello's fraudulent conduct.

Plaintiffs' final attempt to impose liability on Levy and Boonshoft is based on N.Y. BUS. CORP. LAW § 1505(a), which states:

> Each shareholder, employee or agent of a professional service corporation shall be personally and fully liable and accountable for any negligent or wrongful act or misconduct committed by him or by any person under his direct supervision and control while rendering professional services on behalf of such corporation.

The Court of Appeals of New York has explained that § 1505(a) is to be strictly construed "because the statute carves out a limited exception to a rule of broad and general application and imposes liability unknown at common law." We're Assocs. Co. v. Cohen, Stracher & Bloom, P.C., 480 N.E.2d 357, 359, 65 N.Y2d 148, 151 (N.Y. 1985). This Court has previously recognized that "New York case law has held that this section [§ 1505(a)] does not replace the general rule that corporate shareholders are not personally liable for corporate actions. . . . Section 1505 is a slight modification of this general rule, reflecting that shareholders only may be held liable for those corporate actions in which they directly participate." Souki v. Merdinger, Fruchter, Rosen & Co., No. 02 Civ. 10040(NRB), 2003 WL 21436222, at *1 (S.D.N.Y. June 19, 2003); see also Somer & Wand, P.C. v. Rotondi, 219 A.D.2d 340, , 642 N.Y.S.2d 937, (App. Div. 2d

Dep't 1996) (holding that under § 1505(a) "a shareholder is liable for those torts of the corporation in which he is a participant.").

Plaintiffs' state that "the gist of the [negligence] claim against . . . [Levy and Boonshoft] arises from the failure of the sole shareholders, owners of the law firm, to supervise the actions of a subordinate lawyer, defendant Campitiello, whom defendants admit was only a contract employee." (Pls.'s Opp'n at 23.) As Levy and Boonshoft point out, the Amended Complaint repeatedly asserts that they "failed" to supervise Campitiello. (Am. Compl. ¶¶ 34, 35, 222, 223, 225.) Plaintiffs, therefore, do not contend that Campitiello was under "direct supervision and control" of Levy and Boonshoft as required to impose liability under § 1505(a).[7]

Plaintiffs resort to DR 1-104(c) to impose a duty upon Levy and Boonshoft to supervise Campitiello. DR 1-104(c), however, imposes a duty on a "law firm" – not individual attorneys – to supervise the work of "partners, associates, and non-lawyers who work at the firm." But even if in discharging their professional responsibilities Levy and Boonshoft were required to supervise Campitiello, this does not change the fact that the Amended Complaint does not allege that they did. And as explained throughout this opinion, violation of a disciplinary rule does not give rise to an independent cause of action.

---

[7] In setting forth the claim for breach of fiduciary duty the Amended Complaint states that "Attorney's Levy and Boonshoft had direct and supervisory involvement in the day to day operations of Levy & Boonshoft, P.C. and the operation and business of Attorney Campitiello in particular, and particularly had control and supervision over client funds in the law firm escrow account." (Am. Compl. ¶ 190.) In contrast to this single paragraph, the two-hundred and twenty-seven paragraph Amended Complaint repeatedly asserts that Levy and Boonshoft failed to supervise Campitiello and the L&B escrow account. (Id. ¶¶ 34-35, 151,194, 222-226.) Given this inconsistency, and because Plaintiffs themselves assert that the negligence claim is based on the failure of Levy and Boonshoft to supervise Campitiello, (Pls.' Opp'n at 23; Am. Compl. ¶¶ 220-227), paragraph 190 of the Amended Complaint is insufficient to support Plaintiffs' claim based on N.Y. Bus. Corp. Law § 1505(a). In any event, the factual allegations contained in the Amended Complaint do not support the conclusory assertions contained in paragraph 190. (Am. Compl. ¶¶ 37-152.); see Iqbal, 129 S. Ct. at 1949 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In construing § 1505(a) of the New York Business Corporation Law, Plaintiffs liken this action to Beltrone v. General Schuyler & Co., 223 A.D.2d 938, 636 N.Y.S.2d 917 (App. Div. 3d Dep't 1996).  In Beltrone, the plaintiff and defendant K.D. Norwood & Company/1985 ("K.D. Norwood") were general partners of defendant General Schuyler & Company ("General Schuyler").  After a general partner of K.D. Norwood refused to fulfill his obligations under a personal guarantee agreement with the bank that had financed General Schuyler, plaintiff sued, among other parties, an attorney who was an officer of an incorporated law firm and who was also a general partner of K.D. Norwood.  After the lower court denied the defendant attorney's motion to dismiss the legal malpractice claim asserted against him, the attorney appealed.

On appeal, the court explained that under § 1505(a) the attorney could "be personally liable for the negligent performance of  . . . [legal] services [rendered to the plaintiff] if he participated in the negligent acts or supervised and controlled the members of the corporation who committed the negligent acts." Id. at 939, 636 N.Y.S.2d at 918. The court also noted that "[i]n the absence of any basis for the plaintiff's speculative belief that members of a professional corporation supervised others or personally participated in the questioned actions with them, dismissal of a malpractice claim at the pleading stage is appropriate." Id. at 939-40, 636 N.Y.S.2d at 918 (citing Krouner v. Koplovitz, 175 A.D.2d 531, 533, 527 N.Y.S.2d 959, 962 (App. Div. 3d Dep't 1991)). Concluding that the lower court had properly denied the motion to dismiss, the court explained that the defendant attorney "was not merely a member of the professional corporation.  He was an officer and one of the two members whose names make up the

13

corporate name and, <u>more importantly</u>, he was involved in the General Schuyler project as a partner of K.D. Norwood." <u>Id.</u> at 940, 636 N.Y.S.2d at 918 (emphasis added).

Plaintiffs contend that <u>Beltrone</u> stands for the proposition that claims against officers and members of small professional corporations under § 1505(a) will always survive a motion to dismiss. (Pls.' Opp'n at 24.) Plaintiffs, however, ignore the <u>Beltrone</u> court's statement that the fact the attorney defendant was a general partner of one of the other defendants was "more important[]." <u>Beltrone</u>, 223 A.D.2d at 940, 636 N.Y.S.2d at 918. Indeed, to adopt Plaintiffs' understanding of the case would run counter to the Court of Appeal's directive that § 1505(a) is to be strictly construed and New York's "general policy of allowing corporations to be formed for the express purpose of limiting liability." <u>We're Assoc.</u>, 480 N.E.2d at 360, 65 N.Y.S.2d at 152.

Plaintiffs also rely on the improperly submitted fund transfer applications "as clear evidence of some degree of supervision and control over other persons in the firm using the IOLA account." (Pls.' Opp'n at 24.) The Amended Complaint, however, does not allege that Levy and Boonshoft were involved in the transfer of funds from the L&B IOLA account. (Am. Compl. ¶ 53, 103, 125) (alleging that "Attorney Campitiello wired" Plaintiffs' money from the L&B IOLA account). But even if Levy or Boonshoft signed the transfer applications, this does not "present anything beyond . . . [a] speculative belief," <u>Krouner</u>, 175 A.D.2d at 533, 527 N.Y.S.2d at 962, that Campitiello was himself under the "direct supervision and control" of Levy and Boonshoft, particularly in light of the Plaintiffs' assertion that the negligence claim is based on their "failure to supervise" Campitiello. (Pls.' Opp'n at 23.)

Plaintiffs' final argument is that Levy and Boonshoft can be held liable under § 1505(a) because Campitiello's fraud "was accomplished as a result of the negligence of the defendant signatories on the IOLA account." (Pls.' Opp'n at 22.) But § 1505(a) does not create a cause of action for negligence where one does not exist. Instead, it states that a member of a professional corporation "shall be personally and fully liable for any negligent or wrongful misconduct committed by him . . . ." § 1505(a). As set forth above, Plaintiffs' negligence claim against Levy and Boonshoft fails because it is based solely on their alleged violation of the Code of Professional Responsibility. Plaintiffs' sixth claim for negligence against Levy and Boonshoft is dismissed.

## VI. Rule 11

Levy and Boonshoft move under Fed. R. Civ. P. 11 for an award of sanctions and attorneys' fees against Plaintiffs' counsel. To establish a violation of Rule 11(b)(2), it must be "patently clear that a claim has absolutely no chance of success . . . ." E. Gluck Corp. v. Rothenhous, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Under Rule 11(b)(3), "sanctions may not be imposed unless a particular allegation is utterly lacking in support." Storey v. Cello Holdings, L.L.C., 347 F.3d 370, 388 (2d Cir. 2003). Levy and Boonshoft have failed to show a violation of Rule 11(b)(2) or (3) and the motion for sanctions and attorneys' fees is accordingly denied.

## CONCLUSION

For the foregoing reasons, Levy and Boonshoft's motion to dismiss is GRANTED. Plaintiffs' fourth claim for breach of fiduciary duty and sixth claim for negligence against Levy and Boonshoft are dismissed. Levy and Boonshoft's motion for sanctions and attorney's fees is DENIED.

October 13, 2009
New York, NY

So ordered
Paul A. Crotty
USDJ

15